UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION
CASE NO.: _____

MAXIMILIAN FEIGE

        Plaintiff
  v.

CHARLOTTE BURROWS, CHAIR
OF THE EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

        Defendant(s)

_____/

**COMPLAINT**
**WITH JURY TRIAL DEMAND**

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 (2012) and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq, and Title VII of the Civil Rights Act of 1991, to correct unlawful discrimination in federal employment in the form of harassment (non-sexual) and disparate treatment based on reprisal to provide appropriate relief to Plaintiff MAXIMILIAN FEIGE who was adversely affected by such practices.

As alleged with greater particularity below in paragraphs 1 through 30 Plaintiff MAXIMILIAN FEIGE ("**PLAINTIFF**" and/or "**Plaintiff FEIGE**") alleges that he was subjected to ongoing harassment (non-sexual) by the Chair of the Equal Employment Opportunity Commission Charlotte Burrows as well as employees of the EEOC (collectively, **"Defendant Burrows"** or **"Defendant"**) discrimination against Plaintiff, on the bases of race (white, association with Black employees), national origin (American, association with Hispanic employees) sex (male association with Black employees), and reprisal (opposition and participation) for his involvement, individual and as a representative in OEO complaints in both the Tampa Field Office of the EEOC and Miami District of the EEOC.

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3), and Section 717(c) of Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C.A. Section 2000e-16(c), 2000e-5(f)(1) and (3) et seq. ("Title VII") and section 102 of the Civil Rights Act of 1991, as amended, codified at 42 U.S.C.A. Section 1981, et seq.; and the Civil Rights Attorney's Award Act, as amended, codified at 42 U.S.C.A. Section 1988, et seq.

2. Venue is proper in the United State District Court for the Southern District of Florida, Miami Division, pursuant to 42 U.S.C., 2000e-5(f)(3). In addition, venue is proper herein as the primary actions complained of either occurred within or were directed within the geographical boundaries of the Miami, Florida (Southern District of Florida); and pursuant to 28 U.S.C. Section 1391(e).

**PARTIES**

3. Plaintiff FEIGE is a male currently domiciled in Florida, and who for all times relevant herein has been employed on a full-time basis as an employee of the United States Equal Employment Opportunity Commission ("EEOC" and/or the "Agency"). At those times relevant to the subject of this lawsuit, Plaintiff FEIGE was assigned for his professional work to the Miami District Office, a field office within the Miami District of the EEOC located at 100 SE 2nd Street, Suite 1500, Miami, FL 33131 ("MIDO").

4. At all relevant times, the EEOC has continuously been a Federal Agency doing business in the State of Florida and within the City of Miami and has continuously had at least 15 employees. At those times relevant to the subject of this lawsuit, Plaintiff FEIGE was employed by and assigned for his professional work MIDO.

5. Defendant BURROWS is the Chair of the EEOC and, as such, is the Defendant, only

in her official capacity as the Chair of the EEOC. Defendant BURROWS is the senior Executive Branch federal official responsible for the actions of the United States Equal Employment Opportunity Commission, which is the principal subject of the allegations made herein, and which is located at 131 M St. NE, 6th Floor, Washington, DC 20507.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES/CONDITIONS PRECEDENT

6. From approximately 2022 to present, Plaintiff FEIGE suffered from continuing violations of discrimination by Defendant Burrows as outlined in more detail herein.

7. Plaintiff FEIGE advised MIDO management (the EEOC) of complaints that the Agency subjected him to disparate treatment and harassment (non-sexual), based on race (white, association with Black employees), national origin (American, association with Hispanic employees) sex (male association with Black employees), and reprisal (prior EEO activity, opposition and participation individually and on behalf of other employees) since approximately 2022.

8. Plaintiff FEIGE timely initiated the involvement of the Equal Employment Opportunity (EEO) Office on November 3, 2023.

9. Plaintiff FEIGE was issued the Notice of Right to File a Formal Complaint on January 31, 2024. On February 1, 2024, Plaintiff FEIGE timely filed a formal EEO complaint.

10. More than thirty (30) days prior to the institution of this lawsuit, Plaintiff FEIGE filed a charge with the Commission alleging violations of Title VII by Defendant BURROWS.

11. Plaintiff FEIGE submitted charges of discrimination to Defendant BURROWS within 180 days of the discrimination against them.

12. Prior to the institution of this lawsuit, Defendant BURROWS and/or representatives failed/refused to attempt to eliminate the unlawful employment practices alleged below and to effect Defendant's voluntary compliance with Title VII through informal methods of conciliation, conference, and persuasion within the meaning of Section 706(b) of Title VII, 42 U.S.C. Sections

2000e-5(b).

13. Thus, all conditions precedent to bringing this action have been performed or occurred.

## FACTUAL ALEEGATIONS

14. Plaintiff FEIGE was hired by the Agency as an Investigator, GS-12, at MIDO since July 2014.

15. Plaintiff FEIGE is male, disabled veteran, who has consistently been a high performer in his position, as an Investigator at MIDO; and as a result of his superior work record, he has been selected to work on complex investigations.

16. Additionally, Plaintiff FEIGE served as the American Federation of Government Employees ("AFGE") Local 3599 Regional Steward since 2017.

17. As AFGE Local 3599 Regional Steward, Plaintiff FEIGE represented and continues to represent EEOC employees in the Miami and Tampa offices that have been subjected to discrimination and retaliation by management. Specifically, Plaintiff FEIGE performed representational duty for sustained allegations of sexual harassment, harassment, and retaliation against MIDO management officials.

18. Specifically, Plaintiff FEIGE representation of EEOC employees included, but is not limited, to the following individuals:

   a. Mario Hernandez (Miami District Office Investigator): subjected to sexual harassment, non-sexual harassment, and retaliation by MIDO management. (EEO Complaint No. 2018-0024); (EEO Complaint No. 2018-0005); (EEO Complaint No. 2018-0027).

   b. Robert Tom (Miami District Office): subjected to sexual harassment, non-sexual harassment, and retaliation by MIDO management – (EEO Complaint No. 2018-

    0001).

    c. Juan Nieves (Miami District Office): subjected to sexual harassment, non-sexual harassment, and retaliation by MIDO management – (EEO Complaint No. 2018-0016).

    d. Haidy Elshater (Miami District Office): subjected to discrimination and retaliation by MIDO management – (EEOC Complaint No.: 2019-0005).

    e. Nelson Borges (Tampa Field Office): subjected to discrimination and retaliation, by Tampa Field Director Evangeline Hawthorne, based on his sex-Male and for engaging in the protected activity of reporting discrimination.

    f. Christopher Griffin (Tampa Field Office): subjected to discrimination and retaliation, by Tampa Field Director Evangeline Hawthorne, based on his sex- Male and for engaging in the protected activity of reporting discrimination.

19. Plaintiff FEIGE's representation of the individuals listed in sub- paragraphs 18 (a)-(d) resulted in the termination, demotion, or relocation of several management officials in MIDO.

20. Plaintiff FEIGE was discriminated against by Defendant Burrows based on his representation of EEOC employees, as well as, the EEO claims he filed individually.

21. Plaintiff FEIGE filed prior EEO Claim based on his denial of the Enforcement Supervisor position which was announced and opened under vacancy announcements ST- 10738620-20-JB and ST-110 108881827-20-TD.

22. Evangeline Hawthorne served as the Director of the Tampa Field Office since October 2016 as well as, the Miami District Office (MIDO) Director from 2021 to the present ("Ms. Hawthorne" and/or "Director").

23. At all relevant times, Ms. Hawthorne served as Plaintiff FEIGE's supervisor.

24. On or about September 22, 2020, Plaintiff FEIGE filed an EEO complaint against

Ms. Hawthorne, the TAMPFO Director, , Bradley Anderson, and Tim Riera, (EEO Complaint No.: 2020-0067) ("First EEO Complaint").  Specifically, Plaintiff FEIGE alleged that he had been subjected to disparate treatment or harassment based on sex, disability and reprisal from approximately 2019 through 2020 when he was not selected for multiple Supervisory Equal Opportunity Investigator (Enforcement Supervisor) position under vacancies ST- 10738620-20-JB and ST-110 108881827-20-TD.  (see EEO Complaint No. 2020-0067).

25. On or about November 3, 2023, Plaintiff FEIGE filed an additional EEO complaint against Ms. Hawthorne, the MIDO Director and Scott Kelley the Enforcement Manager, , (EEO Complaint No.: 2024-0006). ("Second EEO Complaint").  Specifically, Plaintiff FEIGE alleged that he had been subjected to harassment (hostile work environment) and/or disparate treatment on the bases of race (white; association with Black employees), national origin (American; association with Hispanic employees), sex (male; association with Black male employees), and reprisal (protected activity) when, from November 2022 to the present, the following incidents occurred (see EEO Complaint No. 2024-0006).

26. On November 18, 2022, Plaintiff Feige was ultimately promoted to the GS-13 Supervisory Investigator position after being wrongly denied same on multiple occasions.

27. Commencing in November 2022, Defendant attempted to sabotage Complainant's promotion to the GS-13 Supervisory Investigator position.  Specifically,

    a. Upon Plaintiff FEIGE's promotion to Supervisory Investigator, Ms. Hawthorne and Miguel Escobar, Former MIDO Enforcement Manager ("Mr. Kelley") claimed that Plaintiff FEIGE required "special training;"

    b. Ms. Hawthorne attempted to intimidate Plaintiff FEIGE by sending the MIDO Deputy Director, Roberto Chavez ("Mr. Chavez") to tell Complainant that the Director [Ms. Hawthorne] knows "that [Plaintiff FEIGE] is not loyal" because

Plaintiff FEIGE had been seen speaking to a union official;

c. Commencing in November 2022 and continuing for approximately twelve months, Ms. Hawthorne accused Plaintiff FEIGE of not holding one of his subordinate Investigators accountable and doing the work for the Investigator, and attempted to delay the Investigator's promotion to the GS-12 level;

d. In or around July 2023, Ms. Hawthorne denied Plaintiff FEIGE the opportunity to conduct outreach in Palm Beach, Florida, stating that, "[A]nyone but Plaintiff FEIGE could go;"

e. In August 2023, the Ms. Hawthorne accused Plaintiff FEIGE of failing to use the chain of command when reporting harassment because Plaintiff FEIGE escalated his concerns to the Office of Field Programs (OFP), which Plaintiff FEIGE believes was meant to cause a "chilling effect;"

f. On August 14, 2023, Ms. Hawthorne embarrassed and singled Plaintiff FEIGE out at management meetings, insinuating that Plaintiff FEIGE would tell the union what had been discussed at the meetings;

g. After the August 14, 2023 management meeting, Ms. Hawthorne attempted to intimidate Plaintiff FEIGE, by saying that she would not apologize for what she said at the meeting but only for where she said it; that she does not trust Plaintiff FEIGE due to Plaintiff FEIGE's past union affiliation; and that Plaintiff FEIGE needed to apologize to her for making allegations of discrimination against her when Plaintiff FEIGE was the union steward;

h. On October 31, 2023, Plaintiff FEIGE was issued his fiscal year (FY) 2023 Performance Appraisal with a rating of "highly effective" instead of the "outstanding" rating he deserved, which affected the performance award Plaintiff

FEIGE received; and

i. In or around November 2023, Ms. Hawthorne accused Plaintiff FEIGE of not showing his loyalty to her when Plaintiff FEIGE decided not to participate in the Office of Federal Operations (OFP) Technical Assistance (TA) visit.

28. No other Investigators in the MIDO and/or TAMPFO were treated in the manner outlined above.

29. In part, Plaintiff FEIGE was specifically singled out by Ms. Hawthorne for his prior EEO complaints against her.

30. At all material times, Plaintiff FEIGE, in his capacity as a union steward and as an investigator, had filed and represented multiple employees in complaints against Ms. Hawthorne.

## COUNT I
## (VIOLATION OF TITLE VII-HARRASSMENT AND DISPARATE TREATMENT BASED ON RACE)

31. Plaintiff FEIGE restates and re-alleges the allegations of Paragraphs 1-30 of the Complaint, as if fully set forth herein.

32. At all times material herein, Plaintiff FEIGE is and identifies as a white male with associations with Black employees, a protected class.

33. Plaintiff FEIGE was subject to an adverse employment action. Commencing in November 2022, Defendant attempted to sabotage Complainant's promotion to the GS-13 Supervisory Investigator position by engaging in the following employment actions:

a. Upon Plaintiff FEIGE's promotion to Supervisory Investigator, Ms. Hawthorne and Miguel Escobar, Former MIDO Enforcement Manager ("Mr. Kelley") claimed that Plaintiff FEIGE required "special training;"

b. Ms. Hawthorne attempted to intimidate Plaintiff FEIGE by sending the MIDO Deputy Director, Roberto Chavez ("Mr. Chavez") to tell Complainant that the

  Director [Ms. Hawthorne] knows "that [Plaintiff FEIGE] is not loyal" because Plaintiff FEIGE had been seen speaking to a union official;

c. Commencing in November 2022 and continuing for approximately twelve months, Ms. Hawthorne accused Plaintiff FEIGE of not holding one of his subordinate Investigators accountable and doing the work for the Investigator, and attempted to delay the Investigator's promotion to the GS-12 level;

d. In or around July 2023, Ms. Hawthorne denied Plaintiff FEIGE the opportunity to conduct outreach in Palm Beach, Florida, stating that, "[A]nyone but Plaintiff FEIGE could go;"

e. In August 2023, the Ms. Hawthorne accused Plaintiff FEIGE of failing to use the chain of command when reporting harassment because Plaintiff FEIGE escalated his concerns to the Office of Field Programs (OFP), which Plaintiff FEIGE believes was meant to cause a "chilling effect;"

f. On August 14, 2023, Ms. Hawthorne embarrassed and singled Plaintiff FEIGE out at management meetings, insinuating that Plaintiff FEIGE would tell the union what had been discussed at the meetings;

g. After the August 14, 2023 management meeting, Ms. Hawthorne attempted to intimidate Plaintiff FEIGE, by saying that she would not apologize for what she said at the meeting but only for where she said it; that she does not trust Plaintiff FEIGE due to Plaintiff FEIGE's past union affiliation; and that Plaintiff FEIGE needed to apologize to her for making allegations of discrimination against her while he was the union steward;

h. On October 31, 2023, Plaintiff FEIGE was issued his fiscal year (FY) 2023 Performance Appraisal with a rating of "highly effective" instead of the

        "outstanding" rating he deserved, which affected the performance award Plaintiff FEIGE received; and

   i.  In or around November 2023, Ms. Hawthorne accused Plaintiff FEIGE of not showing his loyalty to her when Plaintiff FEIGE decided not to participate in the Office of Federal Operations (OFP) Technical Assistance (TA) visit.

34.    As such, Defendant's personnel actions were made in a way that was tainted by different treatment based on Plaintiff FEIGE's protective class (White with associations with Black employees).

35.    The above harassment was based on Plaintiff FEIGE's race (White with associations with Black employees).

36.    Plaintiff FEIGE was qualified to perform the job in question. Indeed, on November 18, 2022, Plaintiff FEIGE was ultimately promoted to the GS-13 Supervisory Investigator position after being wrongly denied same on multiple occasions. Plaintiff FEIGE's performance evaluations were always "Outstanding" prior to 2022.

37.    Defendant treated similarly situated employees outside Plaintiff FEIGE class (white male) more favorably. In part, no other employee was:

   a.  improperly withheld promotions;

   b.  harassed, hyper scrutinized and pretextually disciplined by management;

   c.  intimidated by multiple members of management by claiming their union past work deemed them "unloyal";

   d.  accused of improperly engaging in duties by failing to improperly discipline subordinates;

   e.  refusing to engage in outreach opportunities;

   f.  embarrassed at meetings with false claims;

      g. Downgraded performance evaluations from "Outstanding" to "Highly Effective;"

38. The harassment had the purpose or effect of unreasonably interfering with Plaintiff FEIGE's work performance and/or creating an intimidating, hostile, or offensive work environment.

39. For the reasons outlined herein, liability can be imputed on Defendant.

40. Due to the repeated unlawful conduct of the Defendant, the Plaintiff FEIGE has retained undersigned counsel, and the Plaintiff is obligated to pay reasonable attorney's fees and costs.

WHEREFORE, the Plaintiff, MAXIMILIAN FEIGE, respectfully requests that this Court enter judgment against the Defendant, Burrows, as Chair of the Equal Employment Opportunity Commission, and find that the Defendant indeed violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-3(a), for engaging in predicate unlawful acts of Harassment and Disparate treatment based on Race (White with affiliations with Black employees), and order the following additional relief:

A. Award the Plaintiff FEIGE actual damages, including appropriate amounts of front pay, back pay, as applicable, as well as compensatory damages;

B. Award the Plaintiff FEIGE his costs and a reasonable attorney's fee;

C. Enjoin the Defendant from continuing its discriminatory practices: and

D. Grant any and all appropriate relief, which the Court deems to be just, proper and equitable.

## COUNT II
## (VIOLATION OF TITLE VII-UNLAWFUL GENDER DISCRIMINATION)

41. Plaintiff FEIGE restates and re-avers the allegations of Paragraphs 1-30 of the Complaint, as if fully set forth herein.

42. At all times material herein, Plaintiff FEIGE is and identifies as a male with association with Black male employees, a protected class.

43. From 2022, through 2024, Plaintiff FEIGE was discriminated against, on the basis of his sex (male with association with Black employees) and suffered harassment and adverse employment actions. Commencing in November 2022, Defendant attempted to sabotage Complainant's promotion to the GS-13 Supervisory Investigator position by engaging in the following employment actions:

   a. Upon Plaintiff FEIGE's promotion to Supervisory Investigator, Ms. Hawthorne and Miguel Escobar, MIDO Enforcement Manager ("Mr. Kelley") claimed that Plaintiff FEIGE required "special training;"

   b. Ms. Hawthorne attempted to intimidate Plaintiff FEIGE by sending the MIDO Deputy Director, Roberto Chavez ("Mr. Chavez") to tell Complainant that the Director [Ms. Hawthorne] knows "that [Plaintiff FEIGE] is not loyal" because Plaintiff FEIGE had been seen speaking to a union official;

   c. Commencing in November 2022 and continuing for approximately twelve months, Ms. Hawthorne accused Plaintiff FEIGE of not holding one of his subordinate Investigators accountable and doing the work for the Investigator, and attempted to delay the Investigator's promotion to the GS-12 level;

   d. In or around July 2023, Ms. Hawthorne denied Plaintiff FEIGE the opportunity to conduct outreach in Palm Beach, Florida, stating that, "[A]nyone but Plaintiff FEIGE could go;"

   e. In August 2023, the Ms. Hawthorne accused Plaintiff FEIGE of failing to use the chain of command when reporting harassment because Plaintiff FEIGE escalated his concerns to the Office of Field Programs (OFP), which Plaintiff FEIGE believes was

meant to cause a "chilling effect;"

f. On August 14, 2023, Ms. Hawthorne embarrassed and singled Plaintiff FEIGE out at management meetings, insinuating that Plaintiff FEIGE would tell the union what had been discussed at the meetings;

g. After the August 14, 2023 management meeting, Ms. Hawthorne attempted to intimidate Plaintiff FEIGE, by saying that she would not apologize for what she said at the meeting but only for where she said it; that she does not trust Plaintiff FEIGE due to Plaintiff FEIGE's past union affiliation; and that Plaintiff FEIGE needed to apologize to her for making allegations of discrimination against her while he was the union steward;

h. On October 31, 2023, Plaintiff FEIGE was issued his fiscal year (FY) 2023 Performance Appraisal with a rating of "highly effective" instead of the "outstanding" rating he deserved, which affected the performance award Plaintiff FEIGE received; and

i. In or around November 2023, Ms. Hawthorne accused Plaintiff FEIGE of not showing his loyalty to her when Plaintiff FEIGE decided not to participate in the Office of Federal Operations (OFP) Technical Assistance (TA) visit.

44. As such, Defendant's personnel actions were made in a way that was tainted by different treatment based on Plaintiff FEIGE's protective class (Male with associations with Black employees).

45. The above harassment was based on Plaintiff FEIGE's gender (Male with associations with Black employees).

46. Plaintiff FEIGE was qualified to perform the job in question. Indeed, on November 18, 2022, Plaintiff FEIGE was ultimately promoted to the GS-13 Supervisory Investigator position

after being wrongly denied same on multiple occasions. Plaintiff FEIGE's performance evaluations were always "Outstanding" prior to 2022.

47. Plaintiff FEIGE was singled out and discriminated and treated in an unlawful disparate manner when Defendant treated similarly situated employees outside his class (Male with association with Black employees) more favorably. Specifically, no other employee was:

    a. improperly withheld promotions;

    b. harassed, hyper scrutinized and pretextually disciplined by management;

    c. intimidated by multiple members of management by claiming their union past work deemed them "unloyal";

    d. accused of improperly engaging in duties by failing to improperly discipline subordinates;

    e. refusing to engage in outreach opportunities;

    f. embarrassed at meetings with false claims;

    Downgraded performance evaluations from "Outstanding" to "Highly Effective;"

48. The harassment had the purpose or effect of unreasonably interfering with Plaintiff FEIGE's work performance and/or creating an intimidating, hostile, or offensive work environment.

49. It is patently unlawful for the Agency to make personnel decisions on the basis of gender and or to make gender-based personnel decisions and or classification, which is precisely the misconduct, which Defendant's management committed as outlined herein.

50. As a direct and proximate result of the Defendant's workplace misconduct, set forth herein, Defendant committed unlawful gender discrimination, with regard to Plaintiff FEIGE.

51. For the reasons outlined herein, liability can be imputed on Defendant.

52. As a direct and proximate result of the Defendant's workplace misconduct, set

forth herein, Plaintiff FEIGE has suffered emotional and mental anguish, as well as pecuniary losses.

53. Due to the repeated unlawful conduct of the Defendant, the Plaintiff FEIGE has retained undersigned counsel, and the Plaintiff FEIGE is obligated to pay reasonable attorney's fees and costs.

WHEREFORE, the Plaintiff, MAXIMILIAN FEIGE, respectfully requests that this Court enter judgment against the Defendant, Burrows, as Chair of the Equal Employment Opportunity Commission, and find that the Defendant indeed violated Title VII of the Civil Rights Act of 1964. as amended. 42 U.S.C. Section 2000e-2(a), for engaging in an unlawful act of disparate treatment, contrary to the law, and order the following additional relief:

   A. Award the Plaintiff FEIGE actual damages, including appropriate amounts of front pay, back pay, as applicable, as well as compensatory damages;

   B. Award the Plaintiff FEIGE his costs and a reasonable attorney's fee;

   C. Enjoin the Defendant from continuing its discriminatory practices: and

   D. Grant any and all appropriate relief, which the Court deems to be just, proper and equitable.

### COUNT III
### (VIOLATION OF TITLE VII-REPRISAL/RETALIATION)

54. Plaintiff FEIGE restates and re-avers the allegations of Paragraphs 1-30 of the Complaint, as if fully set forth herein.

55. At all times material herein, Plaintiff FEIGE engaged in lawful protected activity from 2017 through 2024, when he participated, both as a union steward and individually, in the EEO process and opposed unlawful discriminatory conduct by filing claims against MIDO management as outlined above.

56.     From 2017 through 2022, Plaintiff FEIGE served as an AFGE Union Steward from 2017 through 2022 in which he represented and engaged in protected activities when he filed claims against Ms. Hawthorne and Defendant.  (See para. 18 (a) through (f), above).

57.     Commencing in 2020, Plaintiff FEIGE filed multiple complaints against Ms. Hawthorne and Defendant related to his own employment.  Specifically, on September 22, 2020 [EEO Claim No.: 2020-0067] and on November 3, 2023 [EEO Claim No.: 2024-0006], Plaintiff FEIGE filed two (2) EEO claims alleging, in part, that Ms. Hawthorne, and Scott Kelley the Enforcement Supervisor subjected him to harassment and disparate treatment.  (See para. 24, and 24, above).

58.     The protective activity occurred from 2017, through the present.

59.     Prior to the dates that Plaintiff FEIGE was subject to the aforementioned harassment and disparate treatment, the Agency was aware of the protected activity.

60.     As a direct result of engaging in lawful protected activity set forth above, Plaintiff FEIGE was subjected to numerous predicate acts of retaliation, when taken together, as a whole, changes his status as an employee; and constitutes actionable adverse employment action(s). Specifically, Defendant's management officials, as set forth above, subjected Plaintiff FEIGE to retaliation that included, but was not limited to:

   a. On or about May 2020 and August 2020, the Agency improperly denying Plaintiff FEIGE's promotion to the Enforcement Supervisor position which was announced and opened under vacancy announcements ST- 10738620-20-JB and ST-110 108881827-20-TD.

   b. Beginning in late 2022 and upon Plaintiff FEIGE's promotion to Supervisory Investigator, Ms. Hawthorne and Miguel Escobar, Former MIDO Enforcement Manager ("Mr. Kelley") claimed that Plaintiff FEIGE required "special training;"

c. Ms. Hawthorne attempted to intimidate Plaintiff FEIGE by sending the MIDO Deputy Director, Roberto Chavez ("Mr. Chavez") to tell Complainant that the Director [Ms. Hawthorne] knows "that [Plaintiff FEIGE] is not loyal" because Plaintiff FEIGE had been seen speaking to a union official;

d. Commencing in November 2022 and continuing for approximately twelve months, Ms. Hawthorne accused Plaintiff FEIGE of not holding one of his subordinate Investigators accountable and doing the work for the Investigator, and attempted to delay the Investigator's promotion to the GS-12 level;

e. In or around July 2023, Ms. Hawthorne denied Plaintiff FEIGE the opportunity to conduct outreach in Palm Beach, Florida, stating that, "[A]nyone but Plaintiff FEIGE could go;"

f. In August 2023, the Ms. Hawthorne accused Plaintiff FEIGE of failing to use the chain of command when reporting harassment because Plaintiff FEIGE escalated his concerns to the Office of Field Programs (OFP), which Plaintiff FEIGE believes was meant to cause a "chilling effect;"

g. On August 14, 2023, Ms. Hawthorne embarrassed and singled Plaintiff FEIGE out at management meetings, insinuating that Plaintiff FEIGE would tell the union what had been discussed at the meetings;

h. After the August 14, 2023 management meeting, Ms. Hawthorne attempted to intimidate Plaintiff FEIGE, by saying that she would not apologize for what she said at the meeting but only for where she said it; that she does not trust Plaintiff FEIGE due to Plaintiff FEIGE's past union affiliation; and that Plaintiff FEIGE needed to apologize to her for making allegations of discrimination against her while he was the union steward;

    i. On October 31, 2023, Plaintiff FEIGE was issued his fiscal year (FY) 2023 Performance Appraisal with a rating of "highly effective" instead of the "outstanding" rating he deserved, which affected the performance award Plaintiff FEIGE received; and

    j. In or around November 2023, Ms. Hawthorne accused Plaintiff FEIGE of not showing his loyalty to her when Plaintiff FEIGE decided not to participate in the Office of Federal Operations (OFP) Technical Assistance (TA) visit.3.

61. There was a causal connection between Plaintiff FEIGE's protected activity described herein, and the subsequent adverse actions, as set forth herein. Additionally, there was a causal connection between Plaintiff FEIGE's protected activity and the subsequent adverse actions as outlined herein.

62. Plaintiff FEIGE always obtained "outstanding" in his Fiscal Evaluations prior to engaging in the aforementioned protective activity.

63. The retaliation endured by Plaintiff FEIGE, which he was subjected to by Defendant's management officials would clearly dissuade a reasonable employee in his position, from making complaints of discrimination and or harassment in the workplace.

64. Defendant BURROWS, acting through its authorized representatives, retaliated against Plaintiff FEIGE, for engaging in workplace protected activity as set forth herein, in direct violation of Section 704(a) of Title VII, 42 U.S.C. Section 2000e-3 (a).

65. Due to the repeated unlawful conduct of the Defendant, the Plaintiff FEIGE has retained undersigned counsel, and the Plaintiff FEIGE is obligated to pay reasonable attorney's fees and costs.

WHEREFORE, the Plaintiff, MAXIMILIAN FEIGE , respectfully requests that this Court enter judgment against the Defendant, Burrows, as Chair of the Equal Employment Opportunity

Commission, and find that the Defendant indeed violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-3(a), for engaging in predicate unlawful acts of retaliation, and order the following additional relief:

    A.  Award the Plaintiff FEIGE actual damages, including appropriate amounts of front pay, back pay, as applicable, as well as compensatory damages;

    B.  Award the Plaintiff FEIGE his costs and a reasonable attorney's fee;

    C.  Enjoin the Defendant from continuing its discriminatory practices: and

    D.  Grant any and all appropriate relief, which the Court deems to be just, proper and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule 38(b), trial by jury on all issues presented herein is respectfully demanded.

Dated this 15th day of January 2025

Respectfully submitted,

/s/   José A. Socorro
**JOSÉ A. SOCORRO, ESQ.**
Florida Bar No.: 011675
AZOY SOCORRO, LLP
*Attorneys for Plaintiff*
300 Aragon Ave, Suite 300
Coral Gables, Florida 33134
Tel: (305) 340-7542
Fax: (305) 418-7438
Email: jose@azoysocorro.com